UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


MARY S. BOGGS and
DALE C. BOGGS, her husband,

        Plaintiffs,

v.                                      Civil Action No. 2:11-0150

CINTAS CORPORATION No. 2,
a Nevada corporation; and
JOHN DOE, as an agent, employee and
servant of Cintas Corporation,

        Defendants and
        Third-Party Plaintiffs,

v.

THE UNITED STATES,

        Third-Party Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending are 1) the motion of the United States to strike the jury demand of third-party plaintiff Cintas Corporation No. 2 ("Cintas"), filed February 23, 2012; 2) the motion of the United States to dismiss or for summary judgment, filed March 13, 2012; 3) the motion of Cintas for summary judgment concerning Mrs. Boggs' knee surgeries, filed February 24, 2012; 4) the motion of Cintas for summary judgment on its liability for plaintiffs' injuries, filed February 24, 2012; 5) the motion of Cintas to strike an affidavit, filed February 24,

2012; 6) the "joint stipulation and motion concerning the US motion to strike" jury demand, filed March 8, 2012; 7) the motion of Cintas for leave to amend, filed March 9, 2012; and, 8) plaintiffs' motion to add exhibit 18 to their response in opposition to Cintas' motion for summary judgment on liability, filed April 4, 2012.

## I.   Background

This action was initiated by plaintiffs for Mary S. Boggs' injuries resulting from a trip and fall allegedly caused by a Cintas Corporation No. 2 ("Cintas") floor mat at the United States Post Office in Clendenin, West Virginia, on October 20, 2008, and for Dale C. Boggs' derivative loss of consortium.

The floor mat that allegedly caused Mrs. Boggs' injuries was delivered to the post office by Cintas on October 16, 2008.  (Cintas' Responses to Plaintiffs' First Set of Interrogatories; Pl.'s Ex. 7, Invoice).  Cintas provided floor mats to the Clendenin Post Office pursuant to a contract with the United States Postal Service ("USPS").  (Cintas' Responses to Plaintiffs' First Set of Interrogatories; United States' Ex. A (the "contract")).  Every two weeks, Cintas would send a delivery driver, John Cleek, from its St. Albans, West Virginia,

2

branch to drop off new mats and remove the old ones for cleaning.  (Id.; Cintas' Rule 26(a)(1) disclosures).

At that time, James Creel was Postmaster and Marcine Mullins was a custodian for the Clendenin Post Office.  Mr. Creel and Mrs. Mullins both testified that they did not recall any problems with the mat upon its delivery.  (Creel dep. at 39; Mullins dep. at 113-114).  Even so, while visiting the post office on October 20, 2008, Mrs. Boggs tripped and fell over what plaintiffs claim were the curled up, outer edges of the mat.[1]  After her fall, Mrs. Boggs underwent knee replacement surgery on her right knee on February 17, 2009, and on her left knee on May 26, 2009.  Doctors performed a revision surgery on her left knee on August 16, 2010.

On November 10, 2010, plaintiffs filed their complaint in state court against Cintas.  On December 21, 2010, Cintas filed its third-party complaint against the United States seeking contribution and indemnity.  On March 8, 2011, the United States removed the action to this court and filed a motion to dismiss for lack of subject matter jurisdiction.

---

[1] Plaintiffs note that throughout this litigation, "the parties and counsel have used the terms, 'hooved up,' curled, kinked, rippled, and rolled up interchangeably to refer to the condition of the outer edges of the floor mat in question." (Pl.'s Response at 1, n. 1).

Pursuant to a memorandum opinion and order entered May 31, 2011, the court granted the United States' motion to dismiss.  <u>See</u> <u>Boggs v. Cintas Corp. No. 2</u>, No. 11-150, slip op. at 11 (S.D. W. Va. May 31, 2011).  Finding diversity jurisdiction, however, the court denied plaintiffs' motion to remand.  <u>Id.</u>  On June 20, 2011, Cintas re-filed its third-party complaint against the United States seeking contribution and indemnity.  The United States filed its initial motion to dismiss Cintas' third-party complaint or for summary judgment on February 27, 2012.  On March 9, 2012, Cintas moved for leave to file an amended third-party complaint.

On February 24, 2012, Cintas filed two motions for summary judgment, one addressing plaintiffs' entitlement to damages and the other addressing Cintas' liability for plaintiffs' injuries.  On the same day, Cintas also filed a motion to exclude the affidavit of Marcine Mullins.  The United States then filed an amended motion to dismiss Cintas' third-party complaint or for summary judgment on March 13, 2012.

II.  Cintas' Motion to Exclude the Affidavit of Marcine Mullins

As an initial matter, Cintas seeks to exclude from evidence the affidavit of Marcine Mullins on the grounds that it contradicts her later-given deposition.  (Cintas' Mem., Ex. A,

4

Mullins Affidavit).  At all relevant times Mullins was an independent contractor for the USPS and custodian at the Clendenin Post Office.  After Mrs. Boggs' fall, Mullins states that she spoke over the phone to an investigator working for plaintiffs' counsel who asked her about Mrs. Boggs' fall and the mats at the Clendenin Post Office.  Following this conversation, Mullins was approached in person by the investigator while working at the post office.  He asked her to sign the affidavit. She testified that she did not read the affidavit prior to signing it, stating that she felt pressure to sign the affidavit so that she could return to work and that she was told that if she did so, she would not have to be involved in the lawsuit any further.  Mullins signed the affidavit on August 31, 2011.

For the purposes of this motion, the court addresses only those statements from the affidavit on which plaintiffs now rely in opposing summary judgment.  (Pl.'s Response to Def.'s Mot. for Summary Judgment at 6 (citing to testimony from Mullins' affidavit ¶¶ 9, 10, and 13)).[2]  The alleged inconsistencies with her later deposition are as follows:

---

[2] Cintas seeks to "exclude the affidavit from evidence." (Cintas' Mot. to Exclude).  The court construes defendant's motion as a request that the court disregard the Mullins affidavit to the extent that the inconsistencies between it and her later deposition testimony constitute a disputed issue of fact.

1)   <u>Affidavit ¶ 9.</u>

> At [the time of the accident], the Post Office had problems previously with the mats on different occasions.

<u>Deposition at 48:8-49:8.</u>

> Q.   Look at No. 9, please.
>
> A.   Yes, I know.  It says that post office had problems with the mats in different occasions.
>
> Q.   Now that we've been sitting here talking about it, did the post office have any problems with the mats that Cintas provided?
>
> A.   No.  They were wrinkled sometimes but everything gets wrinkled depending on how they roll them up.

2)   <u>Affidavit ¶ 10.</u>

> Prior to Ms. Boggs falling, others had complained to the post office that the mats did not lay flat on the floor.

<u>Deposition at 48:8-49:8.</u>

> Q.   Let's go to No. 10, please.
>
> A.   And No. 10, I did tell Mr. Creel that some lady, not Ms. Boggs, said that – cause there was sometime or another there was a – I don't remember if it was prior to this lady falling, but there was a little, there was a raised place.  And I did tell Mr. Creel he needed to call Cintas and tell them, you know, somebody's going to trip over that because I never (sic, knew?) they were going – that somebody would sue them for it, you know, if they tripped.
>
> Q.   Do you remember who this lady was that complained?

> A.   No.  She didn't really complain.  She just
>      said, you know, they needed to fix that, but
>      I don't. . . .
>
> Q.   Do you remember when this lady made the
>      complaint?
>
> A.   I think it was after that lady fell.
>
>                      ***
>
> Q.   You're not sure?
>
> A.   I'm not sure.

3)   **Affidavit ¶ 13.**

> Prior to Ms. Boggs falling, I would complain to the
> postmaster, Jim Creel, about the mats kinking up in
> places, and I told him that the mats were dangerous
> when they were kinked up and that someone was going to
> get hurt on the mats.

**Deposition at 48:8-49:8.**

> Q.   Will you turn the page, please, and look at
>      No. 13.
>
> A.   I did tell him that the mats – but I don't
>      know if it was prior to Ms. Boggs falling,
>      but I would tell him, you know, that he
>      should – and which he did call Cintas and
>      tell them that the rugs were too wrinkly,
>      and the man said they had a – when he told –
>      what I knew for the first time when that
>      gentleman there (indicating) was there, that
>      the man said that they had a different
>      method, you know.
>
>                      ***
>
> Q.   Looking back at Statement 13, do you
>      remember prior to Ms. Boggs falling, telling
>      Mr. Creel that you thought the mats that
>      Cintas was providing were dangerous?
>
> A.   No, I did not.

Under certain circumstances, the court may disregard an affidavit that is inherently inconsistent with deposition testimony.  See Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975-76 (4th Cir. 1990) (disregarding witness's affidavit that contradicted his earlier deposition testimony); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (same).  The rationale for this result, at least in part, is that "'[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'"  Barwick, 736 F.2d at 960 (quoting Perma Research and Dev. Co. v. Singer, 410 F.2d 572, 578 (2d Cir. 1969)). [3]

Our court of appeals has cautioned that "for the rule of Rohrbough to apply, there must exist a bona fide

---

[3] Plaintiffs suggest that Barwick and Rohrbough are distinguishable in that those cases involved sham affidavits generated after the depositions were taken.  Our court of appeals has not addressed whether the sham affidavit doctrine applies to a pre-deposition affidavit.  At least two circuits have concluded that the sequencing matters not.  See In re Citx Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006) ("We perceive no principle that cabins sham affidavits to a particular sequence."); Darnell v. Target Stores, 16 F.3d 174, 177 (7th Cir. 1994) ("[T]hough the timing is reversed [i.e., the affidavit preceded the contradictory deposition testimony], the rule [that the deposition trumps] is the same").  Inasmuch as the court concludes that the Mullins affidavit may be properly considered in this case, the court need not reach the issue.

inconsistency," but the Fourth Circuit has not had occasion to define that term. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 n. 7 (4th Cir. 2001). The Third, Fifth, Seventh, and Ninth Circuits apply a flexible approach before deeming a contrary affidavit a sham. See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007) (citing cases, stating that an affidavit will not be disregarded if the witness can offer "independent evidence on the record" or a "satisfactory explanation for the discrepancy"); see also Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893-94 (5th Cir. 1980) (a court "cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition"); Choudhry v. Jenkins, 559 F.2d 1085, 1090 (7th Cir. 1977) (summary judgment was improper even though party's testimony was "not a paradigm of cogency or persuasiveness," inasmuch it was not a "transparent sham").

While the court observes that Mullins' pre-deposition statements in her affidavit are not in some respects harmonious with her deposition testimony, the apparent inconsistencies noted above are not so material as to mandate the exclusion of her affidavit, in whole or in part, as a sham. Unlike her affidavit, Mullins did exhibit in her later deposition some uncertainty about whether the mats had drawn complaints before

Mrs. Boggs' fall and whether she had informed her superior before Mrs. Boggs' fall that she thought the mats were dangerous.  The discrepancies do not evince such a degree of contradiction as to warrant the disregard of the affidavit. Consequently, the court declines to exclude Ms. Mullins' affidavit from the court's consideration of Cintas' motion for summary judgment as to liability.

### III.   Motions for Summary Judgment

#### A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Id.</u>  The

moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her

version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.   Cintas' Third-Party Claims Against the United States

        The United States contends that the court must dismiss the third-party complaint inasmuch as Cintas' third-party claims of contribution and indemnity are subject to the Contract Disputes Act of 1978 (the "Act") and thus confined to the exclusive jurisdiction of the Agency Board of Contract Appeals or United States Court of Federal Claims.

        "The Contract Disputes Act [also "CDA"] is a comprehensive statutory scheme for resolving contractual conflicts between the United States and government contractors." United States v. J. & E. Salvage Co., 55 F.3d 985, 987 (4th Cir. 1995).  The Act provides for resolution of disputes before the Agency Board of Contract Appeals or the United States Court of Federal Claims.  See 41 U.S.C. §§ 601-613.  Our court of appeals has held that the "review procedures under the CDA are exclusive

of jurisdiction in any other forum." <u>J. & E. Salvage Co.</u>, 55 F.3d at 987 (citing 41 U.S.C. § 605(b)). "Thus, federal district courts lack jurisdiction over government claims against contractors which are subject to the CDA." <u>Id.</u> The issue here is whether by agreeing to the contract containing express language subjecting the contract to the Contract Disputes Act, Cintas has submitted to the exclusive jurisdiction of the Contract Disputes Act and, as a result, its fora, for "all disputes arising under or relating to" the contract in this case. (Contract § 3.12(b)).

The relevant section of the contract, designated "CLAIMS AND DISPUTES," contains the following provisions at section 3.12:

    a.   This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) (the "Act").

    b.   Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

                      ***

    f.   The Contracting Officer's decision is final unless the supplier appeals or files a suit as provided in the Act.

(Id.).[4]

When faced with identical or similar clauses, other district courts have concluded that such provisions vest exclusive jurisdiction in the Agency Board of Contract Appeals or the United States Court of Federal Claims under the Contract Disputes Act. See, e.g., Four Star Aviation, Inc. v. U.S. Postal Service, 120 F. Supp. 2d 523, 526 (D.V.I. 2000) (concluding that identical contract provision language "'selects the resolution fora provided for under the CDA, i.e., the Agency Board of Contract Appeals or the United States Court of Federal Claims, as the exclusive fora in which to bring this action'" (quoting Spodeck v. United States, 26 F. Supp. 2d, 750, 756 (E.D. Pa. 1998))). To hold otherwise, "'the language in the [contract] referring to the CDA would be mere surplusage. There can be no reason to refer to the CDA except to specify the forum for the resolution of disputes.'" Id. The court agrees.

While the Fourth Circuit decision in J. & E. Salvage Co. does not squarely address the forum selection clause issue with respect to the Contract Disputes Act, its broad statement that "district courts lack jurisdiction over government claims against contractors which are subject to the CDA" also supports

---

[4] Cintas does not claim these provisions suffer from any contractual infirmity.

14

the conclusion here.  Id. at 987 (emphasis added).  Cintas
plainly agreed that its contract was "subject" to the Contract
Disputes Act and that "all disputes arising under or relating
to" the contract must be resolved under the Act.  (Contract §
3.12(a)-(b)).  Still, Cintas denies that its third-party claims
for contribution and indemnity "aris[e] under or relat[e] to"
the contract inasmuch as they assert that the contract "does not
provide for Cintas to be indemnified" by the United States.
(Cintas' Response at 2).

        Cintas interprets this provision too narrowly.  The
contract required Cintas to "[t]ake all proper precautions to
protect the safety and health of the supplier's employees,
Postal Service employees, and the public."  (Contract at
§ 3.19(a)(3)).[5]  Moreover, the contract states that "[Cintas] is
responsible for all damage to persons or property . . . that
occurs as a result of its omission(s) or negligence.  [Cintas]
must take proper safety and health precautions to protect the
work, the workers, the public, the environment, and the property
of others."  (Id. at § 3.21(a)).  In the third-party complaint,

_____

        [5] Also pursuant to the contract, Cintas' "[m]aterials,
supplies, articles, or equipment . . . furnished under this
contract . . . must conform to the Occupational Safety and
Health Standards (29 CFR 1910) pursuant to the authority in the
Occupational Safety and Health Act of 1970 (OSHA), and to other
safety and health requirements specified in the contract. . . ."
(Id. at § 3.20(a)).

15

Cintas alleges that the United States had, <u>inter alia</u>, a duty to maintain the premises of the Clendenin Post Office in a reasonably safe condition and to "detect, repair, remedy, and/or report unsafe conditions in the mats and rugs" in the post office.  (<u>See</u> Third Party Complaint at ¶¶ 6-8).  Perhaps so.  In any event, the question of whether Cintas has a right of contribution from the United States is "related to" the contract between them.

Having found that Cintas' third-party claims constitute "disputes arising under or related to" the underlying contract, and that such claims are subject to the Contract Disputes Act and the exclusive jurisdiction of the Agency Board of Contract Appeals or the United States Court of Federal Claims, Cintas' third-party claims must be dismissed for want of jurisdiction.

C.   Plaintiffs' Claims Against Cintas

As an initial matter, plaintiffs do not set forth their claims against Cintas in separate counts, making somewhat ambiguous the precise nature of the claims they are pursuing. Defendant Cintas, in its motion, characterizes plaintiffs as advancing two theories of liability against Cintas: premises liability and products liability.  However, plaintiffs expressly

16

abandon the premises liability theory in their response memorandum.  (See Pl.'s Response to Def.'s Mot. for Summary Judgment on Liability at 9).

Instead, plaintiffs contend that they are proceeding on negligence and products liability theories of recovery. Plaintiffs state that they advance at least two discrete negligence claims: 1) Cintas failed to provide a floor mat free of hazards to the Clendenin Post Office; and 2) Cintas failed to establish and maintain a formal inspection process to determine the need for replacement of its floor mats.  The products liability claim asserts that the floor mat in question was hazardous or defective when Cintas delivered it on October 16, 2008.[6]

---

[6] In their response memorandum, plaintiffs' assert that they seek recovery for Cintas' breach of an implied warranty of merchantability.  (Pl.'s Response to Def.'s Mot. for Summary Judgment on Liability at 14-15).  Nowhere in plaintiffs' amended complaint is this assertion alleged.

As to the raising of new claims in responsive memoranda, our court of appeals, as well as other district courts in our circuit, has looked favorably upon a decision of the Eleventh Circuit, which has held that such efforts are improper without amendment of the complaint.  See Barclay White Skanska, Inc. v. Battelle Mem. Inst., 262 Fed. Appx. 556, 563, 2008 WL 238564, at *6 (4th Cir. 2008) ("'At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).  A plaintiff may not amend her complaint through argument in a brief opposing judgment.'" (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004))).  Barclay observed that other

(Cont.).

17

The crux of the dispute between the Boggs and Cintas is whether the floor mat Cintas delivered to the Clendenin Post Office on October 16, 2008, was defective.  Plaintiffs assert that sufficient evidence exists to preclude summary judgment on this central question.  The court agrees.

Plaintiffs concede that they have no direct evidence that the floor mat in question had curled edges at the time it was delivered to the Clendenin Post Office.  Rather, plaintiffs direct the court to a lengthy discussion of what they describe as circumstantial evidence of Cintas' tortious conduct.

To be specific, plaintiffs marshal the following circumstantial evidence in their effort to prove that the floor mat was hazardous or defective when Cintas delivered it to the Clendenin Post Office on October 16, 2008:  1) Cintas' branch office in West Virginia, which had the responsibility of providing the mats to the Clendenin Post Office, received multiple, similar complaints about their floor mats curling up and causing injury in the years preceding Mrs. Boggs' fall; 2) a discussion between Cintas personnel and the Clendenin postmaster, Mr. Creel, regarding a change in Cintas' laundering process causing the mats to curl; 3) Cintas delivered the floor

circuits have taken similar positions.  <u>Id.</u> at 563 (citing decisions of the Fifth, Sixth, and Seventh circuits).

mat to the post office on October 16, 2008, four days before
Mrs. Boggs' fall; 4) photographs demonstrate the floor mat had
curled up on the edges at the time of Mrs. Boggs' fall; 5)
deposition testimony from the postmaster and plaintiff indicated
the floor mat was curled up at the edges at the time of the
fall; 6) an email from the Clendenin postmaster to another USPS
official stated that "the carpets from Cintas appeared to be
curled and could be causing a safety hazard if not corrected";
7) an affidavit from the custodian Marcine Mullins in which she
avers that prior to Mrs. Boggs' fall, the post office had made
Cintas aware of issues with its floor mats curling up; and 8)
the floor mat in question was never made available by Cintas,
despite plaintiffs' requests.

Without comment as to the weight and credibility of
the foregoing evidence and taking all inferences in plaintiffs'
favor as the nonmoving party, the court is unable to conclude at
this stage that there is no dispute of material fact and that
judgment is appropriate as a matter of law for defendants.  In
short, the inferences that may be drawn from this evidence are
sufficient to preclude summary judgment.  Accordingly, Cintas's
motion for summary judgment on liability is denied.

Finally, Cintas also moves for summary judgment as to
Mrs. Boggs' assertion of damages.  Cintas relies on statements

by Mrs. Boggs' treating orthopedic surgeon, Dr. Jeffrey Cumming, who defendant concedes "testified that a combination of Mrs. Boggs' osteoarthrosis, obesity, prior surgeries, and her fall necessitated her knee replacement surgeries."  (Cintas' Mem. at 4 (citing Cummings dep. at 45:18-47:8, 51:7-15, 58:24-59:12)). Defendant argues that Dr. Cumming's testimony does not "establish that Mrs. Boggs' knee replacement surgeries were necessitated by her fall" inasmuch as he was unwilling to ascribe certain percentages to each possible causation factor (Id.).

As plaintiffs correctly observe, Mrs. Boggs' fall need not be the sole cause of her injuries for her to recover.  See Mays v. Chang, 579 S.E.2d 561, 565 (W. Va. 2003) ("To be clear, a plaintiff's burden of proof is to show that a defendant's breach of a particular duty of care was a proximate cause of the plaintiff's injury, not the sole proximate cause." (emphasis in original)); Syl. pt. 2, Everly v. Columbia Gas of W. Va., 301 S.E.2d 165 (W. Va. 1982) ("A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury.").  Here, Cintas itself acknowledges that Dr. Cumming "did testify to a reasonable degree of medical probability that the fall was a cause of Mrs. Boggs' knee surgeries.  (Id. at 2

(citing Cummings dep. at 55:3-17)).  Inasmuch as some evidence
indicates that Mrs. Boggs' fall was a cause of her knee
surgeries, Cintas' motion for summary judgment concerning Mrs.
Boggs' knee surgeries must be denied.

### IV.   Conclusion

Based on the foregoing discussion, it is ORDERED as
follows:

1) That the motion of the United States to dismiss or
   for summary judgment be, and it hereby is, granted;

2) That the third-party complaint be, and it hereby is,
   dismissed without prejudice, and the United States
   as the third-party defendant is dismissed from this
   action;

3) That the motion of the United States to strike the
   jury demand of third-party plaintiff be, and it
   hereby is, denied as moot;

4) That the "joint stipulation and motion concerning
   the US motion to strike" be, and it hereby is,
   denied as moot;

5) That the motion of Cintas for leave to amend its
   third-party complaint be, and it hereby is, denied
   as moot;

6) That the motion of Cintas to exclude from evidence the affidavit of Marcine Mullins be, and it hereby is, denied;

7) That the motion of Cintas for summary judgment on its liability for plaintiffs' injuries be, and it hereby is, denied;

8) That the motion of Cintas for summary judgment concerning Mrs. Boggs' knee surgeries be, and it hereby is, denied; and,

9) That plaintiffs' motion to add exhibit 18 to their response in opposition to Cintas' motion for summary judgment on liability be, and it hereby is, denied as moot.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

Enter: April 9, 2012

John T. Copenhaver, Jr.
United States District Judge